## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| JERROLD DAGANS, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| vs. | ) Case No. 3:22-CV-3097-MAB |
| | ) |
| HEATHER CECIL, | ) |
| | ) |
| Defendant. | ) |

### MEMORANDUM AND ORDER

**BEATTY, Magistrate Judge:**

This matter is currently before the Court on the motion for summary judgment on the issue of exhaustion filed by Defendant Heather Cecil (Doc. 27; *see also* Doc. 28). For the reasons explained below, the motion is granted.

### BACKGROUND

Plaintiff Jerrold Dagans, an inmate of the Illinois Department of Corrections, brought this civil action pursuant to 42 U.S.C. § 1983 for violations of his constitutional rights at Lawrence Correctional Center (Doc. 1). Following a threshold review of the complaint pursuant to 28 U.S.C. § 1915A, Plaintiff was permitted to proceed on a First Amendment retaliation claim against Defendant Heather Cecil, who was the mailroom supervisor at Lawrence (Doc. 10; *see* Doc. 28-2, p. 15). The factual allegations relevant to that claim are that after Plaintiff arrived at Lawrence on September 18, 2021, he was informed that there were various pieces of property that he could not keep (Doc. 10, p. 2; Doc. 1, p. 6). Plaintiff opted to mail the items out, and he provided an address and $9.80 for postage (Doc 10, p. 2; Doc. 1, p. 6). However, the intended recipient never received

the property (Doc. 10, p. 2; Doc. 1, pp. 6–7). Plaintiff began asking prison officials about the property and supposedly felt as if he had gotten the run-around—Defendant Cecil told him to check with personal property, but personal property told him to check with the mail room (*see* Doc. 10, p. 2; Doc. 1, pp. 7–8). Plaintiff also wrote to the United States Postal Service and was told that the package was never transmitted to them (Doc. 10, p. 2; Doc. 1, p. 8). Plaintiff alleges that he wrote a grievance against Defendant Cecil, and almost immediately thereafter, Cecil began harassing him and interfering with his mail, both within the institution and to external parties (Doc. 10, pp. 6–7; Doc. 1, pp. 13–14).

Defendant Cecil filed a motion for summary judgment on the issue of exhaustion on October 2, 2023 (Doc. 27; *see also* Doc. 28). She argues that there is only one relevant grievance, but it was rejected by the ARB for procedural reasons because it did not specify that any of the retaliatory conduct took place within the 60 days preceding the grievance, and therefore the grievance was unexhausted. Plaintiff filed a response in opposition to the motion for summary judgment (Doc. 35). Defendant Cecil did not file a reply brief. After reviewing both parties' briefs, the Court has determined that there are no genuine issues of material fact, and a hearing is not necessary.

<u>FACTS</u>

There is one grievance relevant to Plaintiff's claim of retaliation against Defendant Cecil: grievance #04-22-242, which was dated April 23, 2022 (Doc. 28, p. 2; *see* Doc. 28-2, pp. 10, 14–16; Doc. 28-3, p. 4). In this grievance, Plaintiff wrote, in pertinent part that, "The incident under this grievance occurred on date 11-15-21 and date 11-22-21" (Doc. 28-2, p. 15). (The Court knows from reviewing the record in this case that November 15,

2021, is the date of the voucher that Plaintiff submitted authorizing payment of postage to mail out his personal property, and November 22, 2021, is the date on which his property was purportedly mailed out (Doc. 1, p. 24; *see also* Doc. 28-2, p. 25)). Plaintiff further wrote that "almost immediately" after he filed a grievance against "Cephus" (which is presumably a misspelling of Cecil's name) and other mail room personnel, his outgoing mail stopped going out or otherwise never reached its destination, and he did not receive some of his incoming mail (Doc. 28-2, pp. 15–16). What he did receive was "torn and dirty" and/or looked like it had been repeatedly crumpled up (Doc. 28-2, pp. 15–16). He further alleges that the "mailroom supervisor" came on the gallery and loudly berated him (*Id.*)

A counselor responded to Plaintiff's grievance on April 27, 2022, indicating that they had spoken to Defendant Cecil, and she said that she does not retaliate against anyone for filing grievances nor target or harass individuals, and that all mail is processed according to IDOC policy (Doc. 28-2, p. 15; *see also* Doc. 28-1, p. 6).

The grievance officer received the grievance on May 23, 2022, but did not review it until August 11, 2022 (Doc. 28-1, p. 5; Doc. 28-2, p. 14). The grievance officer recommended that the grievance be denied because they were unable to substantiate that IDOC policies were not followed (Doc. 28-2, p. 14). The warden concurred and denied the grievance on August 15, 2022 (*Id.*).

Plaintiff appealed to the ARB, where the grievance was received on August 29, 2022 (*see* Doc. 28-2, p. 15). Several days later, the ARB returned the grievance without addressing it because it was "Not submitted in the timeframe outlined in Department

Rule 504" because "no date provided is within 60 days" of the date the grievance was filed (*Id.* at p. 10).

LEGAL STANDARD

Summary judgment is proper only if the movant shows that there is no genuine issue as to any material fact and they are entitled to judgment as a matter of law. FED. R. CIV. P. 56(a). In making that determination, the court must view the evidence in the light most favorable to, and draw all reasonable inferences in favor of, the nonmoving party. *Apex Digital, Inc. v. Sears, Roebuck & Co.*, 735 F.3d 962, 965 (7th Cir. 2013) (citation omitted).

Courts generally cannot resolve factual disputes on a motion for summary judgment. *E.g., Tolan v. Cotton*, 572 U.S. 650, 656 (2014) ("[A] judge's function at summary judgment is not to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial.") (internal quotation marks and citation omitted). However, when the motion for summary judgment pertains to a prisoner's failure to exhaust, the Seventh Circuit has held that disputed factual questions can and should be resolved by the judge (rather than a jury) as a preliminary matter in an evidentiary hearing known as a "*Pavey* hearing." *Smallwood v. Williams*, 59 F.4th 306, 315 (7th Cir. 2023) (citing *Pavey v. Conley*, 544 F.3d 739, 742 (7th Cir. 2008)). *Accord Wagoner v. Lemmon*, 778 F.3d 586, 590 (7th Cir. 2015); *Roberts v. Neal*, 745 F.3d 232, 234 (7th Cir. 2014). But when a prisoner does not raise sufficient factual allegations to demonstrate a genuine dispute of material fact, then no evidentiary hearing is necessary. *Jackson v. Esser*, 105 F.4th 948, 957 (7th Cir. 2024) (citing *Smallwood*, 59 F.4th at 318). Here, as explained in detail below, there are no material issues of fact that require a hearing to resolve.

## DISCUSSION

The Prison Litigation Reform Act provides that a prisoner may not bring a lawsuit about prison conditions unless and until he has exhausted all available administrative remedies. 42 U.S.C. § 1997e(a); *Pavey v. Conley*, 663 F.3d 899, 903 (7th Cir. 2011). Exhaustion is an affirmative defense, which the defendants bear the burden of proving. *Pavey*, 663 F.3d at 903 (citations omitted). In order for a prisoner to properly exhaust his or her administrative remedies, the prisoner must "file complaints and appeals in the place, and at the time, the prison's administrative rules require." *Pozo v. McCaughtry*, 286 F.3d 1022, 1025 (7th Cir. 2002); *see also Woodford v. Ngo*, 548 U.S. 81, 90 (2006). Failure to do so means failure to exhaust. *Riccardo v. Rausch*, 375 F.3d 521, 524 (7th Cir. 2004). However, an inmate is required to exhaust only those administrative remedies that are available to him. *Pyles v. Nwaobasi*, 829 F.3d 860, 864 (7th Cir. 2016); *Dole v. Chandler*, 438 F.3d 804, 809 (7th Cir. 2006). Administrative remedies become "unavailable" when, for example, prison officials fail to respond to a properly filed inmate grievance or when prison employees thwart a prisoner from exhausting. *Pyles*, 829 F.3d at 864; *Lewis v. Washington,* 300 F.3d 829, 833 (7th Cir. 2002); *Dole*, 438 F.3d at 809**.**

As an inmate in the IDOC, Plaintiff was required to follow the three-step grievance process outlined in the Illinois Administrative Code to exhaust his claims. 20 ILL. ADMIN. CODE § 504.800, *et seq.* (2017). The regulations require an inmate to first submit the grievance to their counselor within 60 days of the incident, occurrence, or problem.

*Id.* at § 504.810(a).[1] Then the grievance goes to the grievance officer, who tenders a recommendation to the warden. *Id.* at § 504.830(e). The warden reviews the recommendation and provides the inmate with a written decision on the grievance. *Id.* If the inmate is unsatisfied with the warden's decision, he or she has thirty days from the date of the warden's decision to appeal to the Administrative Review Board ("ARB") for a final determination by the Director of the IDOC. *Id.* at § 504.850(a). The ARB submits a written report of its findings and recommendations to the Director of the IDOC, who then makes a final decision. *Id.* at § 504.850(d), (e).

Defendant Cecil acknowledges that while grievance #04-22-242, dated April 23, 2022, contained allegations related to the surviving claim in this case, this grievance cannot serve to exhaust Plaintiff's administrative remedies because it was rejected by the ARB for being procedurally deficient (Doc. 28, pp. 6–7). Specifically, the ARB was unable to confirm that any of the alleged incidents occurred within the 60-day period prior to the filing of the grievance, as required by Department Rule 504 (*Id.*).

Defendant Cecil is correct. In the grievance at issue, Plaintiff complained that Cecil began retaliating against him almost immediately after he filed a grievance against her (Doc. 28-2, p. 16). The only dates Plaintiff provided in the grievance were November 15 and 22, 2021 (*see id.* at pp. 15–16). As previously stated, those are the dates on which Plaintiff submitted a voucher authorizing payment of postage to mail out his personal property, and the date on which his property was purportedly mailed out (Doc. 1, p. 24;

---

[1] There are exceptions to this rule, none of which apply here. 20 ILL. ADMIN. CODE §§ 504.810, 504.830 (2017).

*see also* Doc. 28-2, p. 25). These are not the dates on which any of the alleged incidents of retaliation occurred.[2]  Plaintiff did not provide those dates (*see id.* at pp. 15–16). Nor did Plaintiff provide the date of the earlier grievance that he filed against Cecil, which allegedly triggered the retaliation (*see id.*).

IDOC regulations state that all administrative grievances must be filed within 60 days of the discovery of the incident giving rise to the grievance.  ILL. ADMIN. CODE tit. 20, § 504.810(a). The regulations further direct prisoners to include factual details in their grievances, including the date when the incident occurred. *Id.* at § 504.810(c). By not including any of the dates or facts of Defendant Cecil's alleged retaliation, Plaintiff failed to comply with the grievance procedures and prison officials were entitled to reject his grievance. *See Maddox v. Love*, 655 F.3d 709, 721 (7th Cir. 2011) ("[A] prisoner must properly use the prison's grievance process. If he or she fails to do so, the prison administrative authority can refuse to hear the case, and the prisoner's claim can be indefinitely unexhausted." (quoting *Dole v. Chandler,* 438 F.3d 804, 808 (7th Cir. 2006))).

Plaintiff attempts to avoid this result through a litany of arguments (Doc. 35), none of which the Court finds persuasive or sufficiently developed. First, he argues that Cecil admitted his grievance was timely filed (Doc. 35, p. 3), but that is simply not the case (*see* Doc. 28, p. 2, para. 4). Next, Plaintiff "hotly disputes" Defendant's contention that he submitted only one grievance containing allegations that Cecil was retaliating against him (Doc. 35, p. 9). But Plaintiff said nothing more (*see id.*). In other words, Plaintiff simply

---

[2] But even if the alleged incidents of retaliation did occur on these dates, then Plaintiff's grievance filed on April 23, 2022, would be untimely.

alluded to filing other grievances about Cecil's retaliation but never expressly and affirmatively stated that he did so. He also failed to provide any sort specifics about these alleged grievances, such as the date he submitted them, how he submitted them, what they said, whether he received a response, if he did anything to follow-up, etc. (*see* Doc. 35).

To be clear, there are two other grievances in which Plaintiff complained that the personal property he mailed home went missing, but neither of them explicitly say, or even implicitly suggest, that Cecil made his property disappear in order to retaliate against him. The first grievance is #2-22-052, dated February 2, 2022 (Doc. 28-2, pp. 22–30). In this grievance, Plaintiff complains that his property was supposedly mailed out but never reached its destination, and he has not been able to get any answers. According to Plaintiff's complaint, this grievance was the protected First Amendment activity that purportedly spurred Cecil to begin retaliating against him (*see* Doc. 1, p. 13). In other words, this grievance pre-dated any of Cecil's supposed retaliation and therefore could not possibly have given the grievance examiners notice of or an opportunity to investigate and determine the facts of his retaliation claim. *See Schillinger v. Kiley*, 954 F.3d 990, 995–96 (7th Cir. 2020) (discussing purpose of exhaustion requirement) (quoting *Turley v. Rednour*, 729 F.3d 645, 650 (7th Cir. 2013). The second grievance is #4-22-241, dated April 21, 2022 (Doc. 28-2, pp. 10–13). In this grievance, which is very brief, Plaintiff complains that his property was mailed out without a tracking number and he asks for the name of the person(s) who handled his property on the day it was supposedly mailed out. Defendant Cecil is not named in the grievance, and it does not say anything about

retaliation (*see id.*). In fact, this grievance was essentially submitted contemporaneously with grievance #4-22-242, dated April 23, 2022, in which Plaintiff *did* explicitly complain about Cecil's retaliation.

Accordingly, to the extent that Plaintiff is trying to argue that any of his previous grievances *in the record* covered his retaliation claim against Cecil, that is simply not the case. And to the extent that Plaintiff is claiming there were other grievances that are *not in the record*, his unadorned suggestion is simply not sufficient to create a genuine dispute of material fact as to whether administrative remedies were unavailable to him and trigger the need for an evidentiary hearing. *Smallwood v. Williams*, 59 F.4th 306, 318 (7th Cir. 2023) (explaining a *Pavey* hearing is only required if the plaintiff points to "sufficient factual allegations demonstrating a genuine dispute as to whether the administrative remedies were available to him.") (citation omitted); *Bordelon v. Bd. of Educ. of the City of Chicago*, 811 F.3d 984, 989 (7th Cir. 2016) ("Rule 56 demands something more specific than the bald assertions of the general truth of a particular matter, rather it requires affidavits that cite specific concrete facts establishing the existence of the truth of the matter asserted." (quotation marks omitted)).[3]

---

[3] *See also Schultz v. Pugh*, 728 F.3d 619, 620 (7th Cir. 2013) (holding summary judgment was properly granted without first having a hearing where plaintiff asserted he did not file grievance due to "fear of reprisal" but did not specify what fear was based on or present any evidence to substantiate his claim); *Moffett v. Wilson*, No. 20-CV-21-WMC, 2023 WL 9184943, at *2 (W.D. Wis. Dec. 19, 2023) (plaintiff's "general statements" about unavailability of grievance forms "provide[d] insufficient detail to create a genuine dispute of fact," particularly because record showed plaintiff submitted a grievance during the time forms were purportedly unavailable), *aff'd sub nom. Moffett v. Dittman*, No. 24-1023, 2024 WL 3251287 (7th Cir. July 1, 2024) ("Simply put, unsworn statements in his brief—which the record does not support—are insufficient to avoid summary judgment."); *Quintana v. Woodward,* No. 18-CV-822-WMC, 2020 WL 409749, at *3 (W.D. Wis. Jan. 24, 2020) (plaintiff's description of grievance he purportedly filed, which did not expressly indicate grievance actually complained about defendant's actions, was "extremely vague and too

Plaintiff also implied that prison officials thwarted him from exhausting his administrative remedies (Doc. 35, pp. 11, 14–19). *See Wallace v. Baldwin*, 55 F.4th 535, 542 (7th Cir. 2022) (explaining that grievance process is rendered unavailable when "prison administrators thwart inmates from taking advantage of a grievance process through machination, misrepresentation, or intimidation" or when it "operates as a simple dead end—with officers unable or unwilling to provide any relief to aggrieved inmates") (quoting *Ross v. Blake*, 578 U.S. 632, 643, 644 (2016)). In particular, he says that he tried "to resolve the issues informally with Cecil, [Warden] Brookhart, and the counselor" and he also "wrote letters to Warden Brookhart, counselor, and ARB." (*Id.* at p. 14). Plaintiff also says that he discussed the retaliation and harassment issue with his counselor in her office, (*id.* at pp. 11, 14), but the counselor "hoodwinked [him] . . . by not investigating and feeding [him] misinformation" (*id.* at p. 11).

However, attempting to resolve an issue informally is generally not a substitute for filing a formal grievance. *Bella v. Meli*, 754 Fed. Appx. 480, 482 (7th Cir. 2019) (writing

---

imprecise to create a genuine issue of material fact"), *aff'd*, No. 20-3358, 2021 WL 3160873 (7th Cir. July 27, 2021). *But see Kaba v. Stepp*, 458 F.3d 678, 681 (7th Cir. 2006) ("Sworn affidavits, particularly those that are detailed, specific, and based on personal knowledge are "competent evidence to rebut [a] motion for summary judgment.") (citation omitted); *Jackson v. Esser*, 105 F.4th 948, 955, 958 (7th Cir. 2024) (inmate established genuine dispute about whether administrative remedies were unavailable where he attested that he filed five grievances, described the complaints in each grievance, said he received no receipt for the grievances, and described efforts to verify the grievances had been processed, which he also supported with a copy of request he submitted asking about the unprocessed grievances); *Lynch v. Corizon, Inc.*, 764 Fed. Appx. 552, 554 (7th Cir. 2019) (prisoner's affidavit was detailed and specific enough to warrant an evidentiary hearing as to whether administrative remedies were unavailable where he attested that prison employees tampered with his medication and gave him an improper dosage, which left him too confused to complete the grievance process); *Dale v. Lappin*, 376 F.3d 652, 655 (7th Cir. 2004) (inmate provided more than "bald assertions" in opposing summary judgment where he identified the various prison employees from whom he asked for grievance forms, identified the specific form he requested, and described each of their responses).

to or speaking with the security director does not satisfy the exhaustion requirement); *Pavey v. Conley*, 663 F.3d 899, 905 (7th Cir. 2011) (participating in an internal-affairs investigation does not satisfy the exhaustion requirement); *Twitty v. McCoskey*, 226 Fed. Appx. 594, 595 (7th Cir. 2007) (making verbal and written complaints to jail staff does not satisfy the exhaustion requirement). *But see Swisher v. Porter Cnty. Sheriff's Dep't*, 769 F.3d 553, 555 (7th Cir. 2014) (reversing summary judgment where officials "invite[d] noncompliance" and "misle[d] inmates about how to invoke [grievance] procedure" by telling plaintiff to speak with senior jail officers, who said him they would resolve his problem, and he was never told to file a grievance or offered a grievance form as requested). And again here, all Plaintiff offered were general and conclusory statements, which he failed to support with any sort of details, such as the dates on which Cecil retaliated against him, the dates of any of his letters or conversations, or what he was told by the counselor or warden (*see id.* at pp. 11, 14–19). Particulars such as these are needed to create a genuine dispute of material fact as to whether he was dissuaded or thwarted from using the formal grievance process. Furthermore, Plaintiff's statements are not set forth in a properly sworn affidavit, declared to be true under penalty of perjury, or otherwise supported with "evidence to substantiate" his claim.[4]  As such, Plaintiff simply has not said enough to defeat summary judgment.

---

[4] "A party asserting that a fact . . . is genuinely disputed must support the assertion by . . . citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials." FED. R. CIV. P. 56(c)(1)(A). "An affidavit or declaration used to support or oppose a motion must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant or declarant is competent to testify on the matters stated." FED. R. CIV. P. 56(c)(4). *See also Pfeil v. Rogers*, 757 F.2d 850, 859 (7th Cir. 1985) (a sworn

Plaintiff next contends that grievances are never resolved in favor of inmates because the prison officials who handle the grievances show loyalty to, and try to protect, their co-workers (Doc. 35, pp. 2, 6, 11–12). This sounds to the Court like Plaintiff is attempting to advance an argument that the grievance process is illusory. "[A]n administrative procedure is unavailable when (despite what regulations or guidance materials may promise) it operates as a simple dead end—with officers unable or consistently unwilling to provide any relief to aggrieved inmates." *Wallace v. Baldwin*, 55 F.4th 535, 542 (7th Cir. 2022) (quoting *Ross,* 578 U.S. at 643). But "[s]howing a remedy to be a 'dead end' is a tall task." *Wallace*, 55 F.4th at 543. And here, Plaintiff has failed to satisfy this tall task because he offered nothing more than a conclusory assertion. He did not offer any evidence or provide any details that he or other inmates previously complained about the same issue but did not receive a response, or received a perfunctory response. *See Wallace,* 55 F.4th at 543.

Finally, Plaintiff argues that there was "a pattern of information being missing that was attached to the original grievance filed" and that the ARB made its decision "from a one-sided version of events" (Doc. 35, p. 12). Specifically, he claims that the copy of the grievance provided by Defendant as an exhibit to the motion for summary was missing "the copies of two envelopes coming in to Plaintiff that had evidence of being stepped on" and "a couple of request slips (copies) to Defendant Cecil, requesting a list of mail

---

affidavit "is a statement reduced to writing and the truth of which is sworn to before someone who is authorized to administer an oath[,]" like a notary); 28 U.S.C. § 1746 (unsworn declaration can be used in place of a sworn affidavit so long as it declares the content to be "true under penalty of perjury").

and the dates it came to [Lawrence]" (Doc. 35, p. 12). This argument, however, is far too undeveloped to be persuasive. To begin with, the Court is unable to tell when exactly Plaintiff is claiming the copies of the envelopes and request slips went missing and whether or not he submitted them to the ARB. It could be that the "original grievance" Plaintiff says the copies were attached to means the grievance that Plaintiff submitted at the very first level to his counselor, and he never got the copies back after that. Or it could mean that Plaintiff submitted the copies to the ARB with his grievance and they are simply missing from the record submitted by Defendant. Simply put, the Court has no idea. Plaintiff also did not provide any explanation as to how and why prison officials are to blame for the missing copies. Further, Plaintiff did not explain how these copies would have changed or added to the story that was presented to the ARB and led to a different decision.

In sum, after taking the facts in the light most favorable to Plaintiff, the Court has determined that there are no genuine issues of material fact and Defendants have met their burden of establishing that the grievance process was available to Plaintiff as a matter of law but he failed to fully exhaust a grievance complaining about Defendant Cecil's retaliatory conduct.

## <span style="font-variant: small-caps">Conclusion</span>

The motion for summary judgment on the issue of exhaustion filed by Defendant Heather Cecil (Doc. 27) is **GRANTED**. This case is dismissed without prejudice for failure to exhaust. The Clerk of Court is **DIRECTED** to enter judgment and close this case on the Court's docket.

**IT IS SO ORDERED.**

**DATED: August 15, 2024**

s/ Mark A. Beatty
**MARK A. BEATTY**
**United States Magistrate Judge**